UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:22-CR-1 JD |
| JAMES FELIX III | |

**OPINION AND ORDER**

The incarcerated defendant, James Felix III, proceeding *pro se*, has moved for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] (DE 41.) For the reasons herein, the motion will be denied.

**A. Background**

Mr. Felix was previously convicted, after pleading guilty, of possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). (DE 19.) This conviction was a result of Mr. Felix dealing heroin out of his home in South Bend. Law enforcement recovered 64 small packages of heroin, a loaded handgun, and $4,000 in cash from the search of his person incident to arrest and from within the home. (DE 23 ¶¶ 7–23.) Mr. Felix had approximately 71 grams of heroin, in the 64 small packages, on his person when he was arrested. (*Id.* ¶ 23.) Mr. Felix admitted to law enforcement that he sold heroin to make money and was earning between $700 and $1,000 per week doing so. (*Id.* ¶ 22.) Mr. Felix was sentenced to a below Guidelines

---

[1] Mr. Felix's motion also requests the Court appoint him a public defender to supplement his motion and file a reply to the Government's response. (DE 41 at 1.) The Court will deny this request as Mr. Felix has no right to counsel at public expense in § 3582 proceedings. *United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021). Mr. Felix is also not entitled to referral to counsel under the terms of General Order 2023-32 because his claims for relief do not turn on the retroactive provision of Amendment 821 to the United States Sentencing Guidelines.

sentence of 57 months of imprisonment as a result of this conviction on February 9, 2023. (DE 38.) His anticipated date of release from the Bureau of Prisons is November 22, 2025.[2]

### B. Legal Standard

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commission, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A). This analysis proceeds in two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (*cert*. denied 142 S. Ct. 1363 (2022)). At the first step the defendant must identify an extraordinary and compelling reason warranting a sentence reduction. *Id.* If the defendant establishes such a reason, the district court, in the discretion conferred by the statute, considers any applicable § 3553(a) factors as part of determining what, if any, reduction to award the defendant. *Id.*

The policy statements to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present. This includes the family circumstances of the defendant such as the need for the defendant to serve as caregiver for a minor child. U.S.S.G. § 1B1.13. The relevant provision states:

**(b) Extraordinary and Compelling Reasons.**--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
**(3) Family Circumstances of the Defendant.**--

---

[2] The Court notes this is several months earlier than the date reflected in the parties' briefing. The Court has independently noted and confirmed this date with the BOP's Inmate Tracking Website.

    **(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
    **(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
    **(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
    **(D)** The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13.

The examples also include when the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the prison. U.S.S.G. § 1B1.13. Specifically, the relevant provision states:

**(b) Extraordinary and Compelling Reasons.**--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
**(1) Medical Circumstances of the Defendant.**--
    **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    **(B)** The defendant is--
        **(i)** suffering from a serious physical or medical condition,
        **(ii)** suffering from a serious functional or cognitive impairment, or
        **(iii)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
    **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
    **(D)** The defendant presents the following circumstances--
        **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

3

>  **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>  **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13.

The application note also indicates that rehabilitation of the defendant "is not, by itself, an extraordinary and compelling reason." *Id.* at 1B1.13(d).

**C. Discussion**

Having reviewed Mr. Felix's submission, the Court finds that he has not established an extraordinary and compelling reason for modification of his sentence.

Mr. Felix presents two claimed extraordinary and compelling reasons for a reduction in his sentence. The first is to build a closer relationship and provide for his minor daughter who is currently in the care of her grandparents following the death of her mother. The second is based on his alleged risk from serious illness or death if he contracts COVID-19.

The Government opposes Mr. Felix's motion. First, they argue his daughters' custodial status is not a proper basis for relief as Mr. Felix was never her primary caregiver and does not intend to become it. Further, Mr. Felix has not adequately explained why his daughter's grandparents are inadequate caregivers. Second, they argue Mr. Felix is not at a particularly high risk of serious illness or death if he contracts COVID-19. Third, the Government also argues that the § 3553(a) factors weigh against a reduction in Mr. Felix's sentence.

> *(1) Mr. Felix has not established an extraordinary and compelling reason for a sentence reduction*

*(a) Mr. Felix's family situation does not constitute an extraordinary and compelling reason for a sentence reduction*

Mr. Felix's request for a modification in sentence to build a closer relationship and care for his minor child is assessed under Sentencing Guidelines section 1B1.13(b)(3)(A). This provision notes that the "death or incapacitation of the caregiver of the defendant's minor child" may constitute an extraordinary and compelling reason for a reduction in sentence. U.S.S.G. § 1B1.13(b)(3)(A).

First and foremost, Mr. Felix has not shown "incapacitation of the caregiver" based on the particular circumstances of this case. Undoubtedly, the death of his daughter's mother is a tragedy and a hardship to the child. However, Mr. Felix acknowledges that the child is currently in the care of her grandparents. Mr. Felix alleges that the grandparents are unable to provide "a health & loving home on a consistent basis due to them both working full time jobs and their own diminishing health." (DE 41 at 12.) But Mr. Felix does not provide any details or evidence to substantiate this claim about the inadequacy of his daughters' current caregivers.[3] He also does not explain how he would fill these alleged gaps in their care if he was released. He provides only a general description of his plan to find a job, particularly one with longer term career prospects, reside with his brother and re-establish a relationship with his daughter. (DE 41 at 51.)

As well, it isn't even clear to the Court that Mr. Felix seeks custody or intends to be his daughter's primary caregiver. This Court has previously noted that it looks to whether the

---

[3] If anything, the fact that the grandparents are both employed full time indicates their ability to serve as caregivers for the child. Additionally, while the grandparents are somewhat older (55 and 57, respectively) they are not so advanced in age that it inherently raises concerns about their ability to care for a child.

5

defendant would be "legally entitled to custody of the children" if released and whether the defendant would be a "suitable caregiver" to the children. *United States v. Ray*, No. 3:19-CR-46, 2023 WL 3411024, at *3 (N.D. Ind. May 12, 2023) (citing *United States v. Johnson*, No. 1:15-CR-0059, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020)). Mr. Felix has not explained why he would be considered a suitable caregiver upon release. Mr. Felix has never served as the child's primary caregiver. She did not live with him prior to his arrest, and he did not provide consistent financial support prior to his incarceration. (DE 23 ¶ 92.) Further, Mr. Felix is not proposing to serve as his daughter's primary caregiver. He is seeking to be released to live at his brother's house where he has his own room but does not appear to have any intention for her to live with him. Rather, he wants to "start a new relationship" with his daughter while she lives with her grandparents and if that relationship leads to increased custodial care in the future, he is "okay with this." (DE 41 at 51.) It is commendable that Mr. Felix wants a relationship with his daughter and to be in a position to provide for her. Nonetheless, the Court cannot conclude at this time that Mr. Felix would qualify as a "suitable caregiver" under the law for purposes of compassionate release.

Consequently, the Court finds that Mr. Felix has not established an extraordinary and compelling reason for a reduction in his sentence.

*(b) Mr. Felix's medical conditions do not constitute an extraordinary and compelling reason for a reduction in sentence*

Mr. Felix identifies three medical conditions which he suggests place him at increased risk from COVID-19: hypertension, obesity, and pre-diabetes. (DE 41 at 34.)

Mr. Felix's claims do not satisfy the Sentencing Commission's policy statement discussing what medical circumstances constitute an extraordinary and compelling reason. The latest version of the Guidelines contemplates the risk posed by a widespread infectious disease outbreak and notes that may constitute an extraordinary and compelling reason if several criteria are satisfied.[4]

> **(D)** The defendant presents the following circumstances--
> **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

COVID-19 has been a fact of American life for more than four years. *United States v. Vaughn*, 62 F.4th 1071, 1071 (7th Cir. 2023). For prisoners who are vaccinated against the disease, such as Mr. Felix (DE 44-3), the risk of serious complications from a breakthrough infection is modest. *Vaughn*, 62 F.4th at 1071. Additionally, the comparatively high vaccination rate among BOP staff and inmates has significantly shifted the dynamic when close confinement made places such as prisons, nursing homes, and other locations centers for COVID-19 fatalities. *Id.* The Seventh Circuit has recently noted it has not been presented with data suggesting that being in these locations continues to present a higher risk and Mr. Felix has offered none with his

---

[4] There are other medical circumstances which may qualify as an extraordinary and compelling reason, but Mr. Felix has not argued any are applicable here and the Court's review does not indicate any apply. *See* U.S.S.G. § 1B1.13(b)(1)(A)–(C).

motion. *Id.* The latest COVID-19 data for FCI-Seagoville, where Mr. Felix is located, indicates zero active cases at the facility.[5]

The Court is aware that new variants of the COVID-19 virus have developed, but so too have new variants of the vaccine to combat the virus. *Id.* Mr. Felix has not alleged that the latest variants of the safe and effective vaccine are unavailable to him or would be ineffective based on his combination of conditions. Moreover, BOP medical records indicate his conditions are managed with care available in custody. Specifically, his BOP medical records indicate that he has a longstanding history of hypertension but is currently stable. (DE 44-1.)

In sum, Mr. Felix has not shown that his combination of personal health factors and risk of complications from COVID-19 infection constitute an extraordinary and compelling reason for a reduction in his sentence.

### (2) *The § 3553(a) factors weigh against reducing Mr. Felix's sentence*

The Court also concludes, in the alternative, that even if Mr. Felix had an extraordinary and compelling reason for his release, the § 3553(a) factors would weigh against granting his request.

The § 3553(a) factors include a requirement that the sentence imposed should "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Section 1B1.13 also instructs that a factor the Court should consider in adjudicating a request for compassionate release is whether the defendant is a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2).

---

[5] Federal Bureau of Prisons, BOP Statistics: Inmate COVID-19, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed May 22, 2024) (reflecting data as of May 17, 2024, that FCI Seagoville (represented by facility code "SEA") had zero active cases).

Mr. Felix admitted to dealing heroin, a particularly dangerous drug, out of his home and possessed a firearm in his home during the course of his offense. (DE 23 ¶¶ 22–24.) Mr. Felix was on probation for two separate offenses when he committed the instant offense. (*Id.* ¶ 69.) Mr. Felix also has a considerable criminal history, having accrued ten criminal history points on the basis of prior convictions. (*Id.* ¶ 68.) Aggravating this conduct, Mr. Felix had a considerable amount of heroin on his person when arrested by officers, approximately 71 grams. (*Id.* ¶ 28.) As previously mentioned, Mr. Felix is serving a sentence of 57 months imprisonment imposed in February 2023, and is scheduled for release in November 2025.[6] This reflects Mr. Felix has approximately 18 months left on his sentence and consequently has served roughly sixty-eight percent of his sentence.

Mr. Felix's motion contains BOP records indicating active participation in the drug treatment program and taking multiple classes while incarcerated. (DE 41 at 40–41.) He should be commended for such rehabilitative efforts, and these are positive factors which support his request. BOP records also reflect he has no disciplinary history since being incarcerated, again this is a positive factor. (*Id.* at 48.) However, he has been assessed by the BOP as being at a medium risk for recidivism which is somewhat concerning. (*Id.* at 42.)

Considering these factors together, the Court finds they collectively weigh against Mr. Felix's release. Mr. Felix was convicted of dealing heroin, a particularly addictive and dangerous drug. He indicated he was making $700–$1,000 per week by dealing heroin which is not an insignificant amount and reflects a fairly large volume of drugs being sold. Further, Mr. Felix was dealing heroin while in possession of a firearm. This is a serious offense which requires a punishment sufficient to promote respect for the rule of law and discourage others from engaging

---

[6] The Court would note Mr. Felix was in custody beginning in April 2022. (DE 8, 9.)

in this harmful conduct. In consideration of the need to protect the public from future offenses by Mr. Felix, the Court finds his medium recidivism risk assessment by the BOP to be troubling. The Court recognizes Mr. Felix's positive developments while in custody and encourages him to continue making positive decisions. Nonetheless, on balance, the § 3553(a) factors weigh against reducing his sentence.

The Court would consequently deny Mr. Felix's motion in discretion based on the balance of the § 3553(a) factors, even if he had provided an extraordinary and compelling reason for his release.

### D. Conclusion

For those reasons, the Court DENIES Mr. Felix's motion for compassionate release or reduction in sentence. (DE 41.)

SO ORDERED.

ENTERED: May 23, 2024

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court